IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NATHANIEL L. JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | C. A. No.: 10-919-SLR |
| PERRY PHELPS, DAVID PIERCE, ) | |
| CHRISTOPHER KLINE, MICHAEL ) | **JURY TRIAL DEMANDED** |
| COSTELLO, JAMES SCARBOROUGH, ) | |
| MICHAEL TRADER, STEVEN FLOYD, ) | |
| MIGUEL FIGUEROA, VINCENT LEWIS, ) | |
| KEITH BURNS, BRANDON RICHARDSON, ) | |
| MARK DAUM, JESSE MARTIN, PAUL ) | |
| GAUTHIER, CORRECTIONAL OFFICER ) | |
| ENDICOTT, DR. STERN and MARK ) | |
| WARNER, in their individual capacities, ) | |
| Defendants. | |

## THIRD AMENDED COMPLAINT

Plaintiff Nathaniel L. Jackson, by and through his undersigned counsel, alleges as follows against Defendants, Warden Perry Phelps, Deputy Warden David Pierce, Deputy Warden Christopher Kline, Major Michael Costello, Major James Scarborough, Lieutenant Michael Trader, Steven Floyd, Miguel Figueroa, Vincent Lewis, Keith Burns, Brandon Richardson, Mark Daum, Jesse Martin, Paul Gauthier, Correctional Officer Endicott, Dr. Stern,[1] and Mark Warner (collectively, "Defendants"):

### PARTIES

1. Plaintiff Nathaniel L. Jackson ("Mr. Jackson") is a citizen of the State of Delaware who is currently incarcerated at James T. Vaughn Correctional Center, 1181 Paddock

---

[1] Plaintiff has been unable to obtain the first names of Correctional Officer Endicott and Dr. Stern.

1

Road, Smyrna, Delaware 19977, SBI No. 00659018. At all times relevant hereto, Mr. Jackson was a pretrial detainee at James T. Vaughn Correctional Center.

2. Defendants Phelps, Pierce, Kline, Costello, Scarborough, and Trader are, and at all times herein mentioned were, acting in supervisory capacities at James T. Vaughn Correctional Center.

3. Defendants Floyd, Figueroa, Lewis, Burns, Richardson, Daum, Martin, Gauthier, Endicott, Stern, and Warner are, and at all times herein mentioned were, corrections officers, doctors, nurses, or other employees at James T. Vaughn Correctional Center.

4. At all times herein, Defendants were acting within the course and scope of their employment and were acting as servants, agents and employees of James T. Vaughn Correctional Center.

## FACTS COMMON TO ALL COUNTS

5. On or about March 18, 2010, Mr. Jackson tried to flush trash down the toilet in his cell and the toilet backed up and overflowed into his cell. Upon learning that Mr. Jackson's toilet overflowed, Defendants Lewis and Burns took Mr. Jackson to a room where he was handcuffed and shackled to a table.

6. Shortly thereafter, Defendants Lewis and Burns took Mr. Jackson, who was in handcuffs and foot shackles, to another building where Defendant Trader was waiting outside. Defendant Trader accused Mr. Jackson of purposely flooding his cell, stating "That's what inmates do" in response to Mr. Jackson's protests to the contrary. Defendant Trader further informed Mr. Jackson that he would be placed in 24-hour restraints, a custom or practice often utilized at James T. Vaughn Correctional Center.

01:12328386.1

7. Defendants Trader, Lewis, and Burns then escorted Mr. Jackson to another building at the correctional center where Defendant Richardson joined them, and all four corrections officers placed Mr. Jackson in a small observation room. They commanded Mr. Jackson to remove all of his clothing except for his boxers, uncuffing and unshackling him as needed and then recuffing him. They then demanded that Mr. Jackson kneel and face the wall. After Mr. Jackson kneeled, Defendant Lewis threatened to put Mr. Jackson's face through the wall if he moved.

8. At that point, Mr. Jackson was placed in full restraints, including foot shackles, handcuffs secured to a waist chain, and a black box with a padlock that bound Mr. Jackson's wrists together.

9. Mr. Jackson informed the officers that his handcuffs were too tight, causing him pain. A nurse was called to take a look at Mr. Jackson's handcuffs and reported that the handcuffs were fine. The officers and the nurse then left Mr. Jackson alone in the observation room.

10. Still experiencing pain and discomfort from the handcuffs, Mr. Jackson continued to complain and, when ignored, began pulling the doorknob back and forth to catch the attention of the officers.

11. Defendants Floyd and Figueroa, observing this behavior, laughed at Mr. Jackson. Defendant Richardson, also present, told Mr. Jackson that the officers were going to put a foam helmet on him for jiggling the door.

12. Mr. Jackson protested and retreated to the corner of the observation room. Defendants Richardson, Floyd, Figueroa, Martin, and Gauthier entered the observation room, grabbed Mr. Jackson and took him to the ground by kicking the back of his knees.

01:12328386.1

13. While on the floor, Mr. Jackson held his chin to his chest to prevent the four officers from placing the foam helmet on his head. During this time, Mr. Jackson was telling the officers that he was not a threat to anyone and did not want to put the helmet on.

14. As Mr. Jackson was protesting, Defendant Richardson stuck his hand in Mr. Jackson's mouth and yanked his head up so the officers could put the foam helmet on Mr. Jackson. Simultaneously, Defendant Richardson threatened to "f*** up" Mr. Jackson if he bit Defendant Richardson. After placing the helmet on Mr. Jackson, the officers left the room.

15. Mr. Jackson nudged the helmet off, and the officers laughed as he did so. Mr. Jackson suffered scratches to his face as a result of the ordeal. The officers eventually left the hallway, leaving Mr. Jackson alone with a nurse, Defendant Warner, stationed across the hallway.

16. With Defendant Warner across the hall, Mr. Jackson continued to use the door to alert the nurse that his handcuffs were too tight and needed to be loosened. Red welts had formed on his Mr. Jackson's wrists by this time. Upon information and belief, Defendant Warner phoned the corrections officers each time Mr. Jackson banged the door.

17. Soon thereafter, Defendants Lewis, Burns, Floyd, Richardson, Figueroa, and Endicott all returned to the observation room and informed Mr. Jackson that his time in restraints had expired. They then instructed Mr. Jackson to kneel down facing the wall.

18. Mr. Jackson, surprised because only a few hours had passed, did as commanded. Once Mr. Jackson was on his knees, the officers rushed in and pinned him to the ground on his back. As they pinned Mr. Jackson down, the officers laughed and yanked Mr. Jackson's boxers down to his ankles.

01:12328386.1

19. Defendant Warner then entered the room with a needle filled with clear fluid. Mr. Jackson, alarmed, asked what was in the needle and no one responded. Defendant Warner, despite Mr. Jackson's objections, proceeded to inject Mr. Jackson in his right and left sides.

20. Upon information and belief, Defendant Stern was involved in the decision to forcibly inject Mr. Jackson.

21. After the injections, Defendants left the room, leaving Mr. Jackson with his boxers down.

22. As Mr. Jackson struggled to pull his boxers up, Defendant Floyd, from another room, observed Mr. Jackson and mocked him, telling Mr. Jackson that he would not be making any more noise and that he should go to sleep.

23. At that time, Defendant Richardson brought in a dirty mattress and sheet. Mr. Jackson soon became tired and fell asleep.

24. The next morning before breakfast, Mr. Jackson asked for his handcuffs to be removed so he could use the bathroom and was informed by the corrections officer on call at the time that he would have to remain handcuffed because Defendant Trader circulated a memo to the staff stating that Mr. Jackson's restraints were not to be removed for any reason. Another corrections officer, upon learning of the situation, eventually loosed one of Mr. Jackson's hands so he could use the bathroom.

25. When breakfast arrived, an unknown corrections officer on duty refused to release Mr. Jackson's restraints so he could eat. Unable to eat normally due to his full restraints, Mr. Jackson did not have breakfast.

01:12328386.1

26. When lunch arrived, Defendant Daum refused to release Mr. Jackson's restraints so he could eat and this time told him to "be creative." Hungry and unable to eat normally due to his restraints, Mr. Jackson got on his hands and knees and ate like an animal from the meal tray.

27. When Mr. Jackson's 24-hour restraint period expired, Defendant Richardson escorted Mr. Jackson, who was still clothed in only his boxers and without shoes or socks, outside and back to the building in which Mr. Jackson was housed. Once back in his cell, Mr. Jackson's restraints were released.

28. The officers also wrote Mr. Jackson up for flooding his cell, resulting in Mr. Jackson losing all privileges for five days.

29. In the months that followed, Defendants Lewis and Burns often mocked Mr. Jackson, asking Mr. Jackson if he wanted a horse tranquilizer again.

30. Mr. Jackson filed a grievance with Defendant Phelps regarding the incident. The grievance was later returned as "non-grievable, staff issues."

## COUNT I

*42 U.S.C. § 1983 Claim Against Defendants Phelps, Pierce, Kline, Costello, Scarborough, and Trader*

31. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 29 of this Complaint.

32. At all times relevant hereto, Defendants Phelps, Pierce, Kline, Costello, Scarborough, and Trader failed to employ a practice or procedure by which a pretrial detainee threatened with the punitive measure of 24-hour restraints can contest and receive a fair hearing as to whether the pretrial detainee's behavior warrants such a measure.

33. Because 24-hour restraints is a punitive measure often utilized at James T. Vaughn Correctional Center, Defendants Phelps, Pierce, Kline, Costello, Scarborough, and

01:12328386.1

Trader knew, or should have known, that the absence of such a practice or procedure created an unreasonable risk of harm to pretrial detainees under color of Delaware law and to Mr. Jackson's Fourteenth Amendment due process rights as a pretrial detainee.

34. Defendants Phelps, Pierce, Kline, Costello, Scarborough, and Trader's failure to employ the abovementioned practice or procedure exhibited deliberate, reckless, and callous indifference to this risk of harm, was the moving force behind the violation of Mr. Jackson's Fourteenth Amendment due process rights, and caused injuries to Mr. Jackson, including, but not limited to, physical injuries, and mental and emotional distress, as the attacks triggered memories of sexual and physical abuse Mr. Jackson suffered as a child.

## COUNT II

### 42 U.S.C. § 1983 Claim Against Defendants Trader, Floyd, Figueroa, Lewis, Burns, Richardson, Daum, Martin, Gauthier, Endicott, Stern, and Warner

35. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 33 of this Complaint.

36. Defendants placed Mr. Jackson in twenty-four hour restraints for flooding his cell despite the fact that the flooding was unintentional. This restriction was unnecessary and unreasonable given that Mr. Jackson did not pose a threat to anyone's safety, including his own, and that Mr. Jackson was not given an opportunity to fairly contest the restriction.

37. While Mr. Jackson was fully restrained, Defendants kicked Mr. Jackson in the back of the knees, pinned Mr. Jackson to the ground, yanked Mr. Jackson's head back by inserting fingers in his mouth, and forced a foam helmet on his head.

01:12328386.1

38.  While Mr. Jackson was fully restrained, Defendants also pinned Mr. Jackson to the ground, and yanked his boxers down to his ankles, and forcibly injected Mr. Jackson, or caused him to be injected, with an unknown substance.

39.  Mr. Jackson's restraints were not even released to permit him to eat, so he had to eat food from a meal tray like an animal.

40.  All of these acts were unnecessary and unreasonable given that Mr. Jackson did not pose a threat to anyone's safety, including his own, and Mr. Jackson's movement was already severely limited in light of his restraints. The involuntary administration of medication also had a painful and frightening effect on Mr. Jackson.

41.  The ensuing write-up and five-day loss of privileges were also unnecessary and unreasonable given the 24-hour restraint punitive measure that Mr. Jackson had already endured and that Mr. Jackson was not given an opportunity to fairly contest the accusation that he intentionally flooded his cell.

42.  In addition, the aforementioned acts were punitive in nature and not necessary to ensure Mr. Jackson's appearance at trial or to maintain safety, security, or efficiency at the correctional center.

43.  By engaging in the aforementioned acts, Defendants, under color of Delaware law, willfully and intentionally violated and acted with evil motive or intent and reckless or callous indifference to Mr. Jackson's Fourteenth Amendment procedural and substantive due process rights.

44.  As a direct and proximate result of Defendants' conduct, Mr. Jackson suffered injuries including, but not limited to, physical injuries, and mental and emotional distress, as the attacks triggered memories of sexual and physical abuse Mr. Jackson suffered as a child.

## COUNT III

***Battery Claim Against Defendants Floyd, Figueroa, Lewis, Burns, Richardson, Martin, Gauthier, Endicott, Stern, and Warner***

45. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 43 of this Complaint.

46. By kicking Mr. Jackson in the back of the knees, pinning Mr. Jackson to the ground, and yanking Mr. Jackson's head back by inserting fingers in his mouth, and forcing a foam helmet onto Mr. Jackson's head, Defendants made contact with Mr. Jackson's body in a harmful or offensive manner, thereby committing the tort of battery.

47. Furthermore, by pinning Mr. Jackson to the ground, yanking his boxers down to his ankles, and injecting, or causing to be injected, an unknown substance, Defendants made contact with Mr. Jackson's body in a harmful or offensive manner, thereby committing the tort of battery.

48. These tortious acts were unnecessary and unreasonable given that Mr. Jackson did not pose a threat to anyone's safety, including his own, and Mr. Jackson's movement was already severely limited in light of his restraints.

49. In committing these tortious acts, Defendants acted in bad faith, without the belief that the public interest would be best served by their actions, and with wanton negligence or willful and malicious intent.

50. As a direct and proximate result of the battery committed by Defendants, Mr. Jackson suffered injuries including, but not limited to, physical injuries, and mental and emotional distress, as the attacks triggered memories of sexual and physical abuse Mr. Jackson suffered as a child.

## COUNT IV

*Intentional Infliction of Emotional Distress Claim Against Defendants Floyd, Figueroa, Lewis, Burns, Richardson, Martin, Gauthier, Endicott, Stern, and Warner*

51. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 49 of this Complaint.

52. Defendants' abovementioned conduct towards Mr. Jackson was extreme and outrageous, as Mr. Jackson did not present a threat to anyone's safety, including his own, and Mr. Jackson's movement was already severely limited in light of his restraints.

53. Defendants' conduct exceeded the bounds of decency and is intolerable in a civilized community.

54. By way of their extreme and outrageous conduct toward Mr. Jackson, Defendants intentionally and recklessly caused Mr. Jackson bodily harm and severe emotional distress including fright, humiliation, anxiety, and mental anguish.

55. In committing these tortious acts, Defendants acted in bad faith, without the belief that the public interest would be best served by their actions, and with wanton negligence or willful and malicious intent.

56. Defendants' conduct towards Mr. Jackson was done in conscious disregard of Mr. Jackson's right to be free from such tortious behavior.

57. As a direct and proximate result of Defendants' conduct, Mr. Jackson has suffered and/or continues to suffer injuries including, but not limited to, physical injuries, and mental and emotional distress, as the attacks triggered memories of sexual and physical abuse Mr. Jackson suffered as a child.

01:12328386.1

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

A.    Enter judgment in favor of Plaintiff and against Defendants;

B.    Enter an Order declaring Defendants' conduct unconstitutional;

C.    Award Plaintiff compensatory and punitive damages against Defendants;

D.    Award Plaintiff's counsel reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

E.    Grant Plaintiff such other and further relief as may be just and proper under the circumstances, including but not limited to appropriate injunctive relief.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Erika R. Caesar*
_____
Erika R. Caesar (No. 5143)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600
ecaesar@ycst.com
rvrana@ycst.com

Dated: July 30, 2012    *Attorneys for Plaintiff*